PETER C. BUCKELEW, RESPONDENT, v. CITY OF NEW BRUNSWICK, APPELLANT.

Submitted May 11, 1934—Decided October 2, 1934.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and BODINE.

For the appellant, *William F. McCloskey.*

For the respondent, *David T. Wilentz.*

The opinion of the court was delivered by

PARKER, J.   The plaintiff, a farmer, was very seriously injured by the collapse of the "market shed" owned and operated by the city of New Brunswick.   He obtained a large verdict for damages which was attacked as excessive on rule to show cause and upheld by the trial court.   Exceptions to rulings of law were duly reserved, and are pressed here on this appeal.

The market shed was an old structure, in bad order, consisting apparently of a roof supported by four by four col-

umns spaced eight or ten feet apart. The shed was two hundred and fifty feet long and about fifteen feet wide, covering what is described as a concrete walk, and providing space for fifty "stalls" for which the city collected a fee from farmers using them. Plaintiff had stall No. 44 near the middle of one side. Whether on the morning in question, he had backed his truck into the stall, or what the exact situation was, is not very clear on the evidence, but the essential facts are that plaintiff was himself under the shed when the roof structure moved longitudinally toward Burnett street, the supporting columns all tilted over together, and the roof came to the ground with a crash, pinning the plaintiff under it. He testified that he would have been crushed to death except that his truck kept some of the weight off him.

The points made for appellant relate to denial of motions to nonsuit and direct a verdict for defendant: to alleged errors in the charge, and to one ruling on evidence.

The motion to nonsuit was put upon the grounds (a) that in operating the market, the city was engaged in a governmental function. We have held to the contrary in *Ketcham* v. *Newark,* 3 *N. J. Mis. R.* 399; 128 *Atl. Rep.* 579, and *Zboyan* v. *Newark,* 104 *N. J. L.* 258; (b) contributory negligence; (c) assumption of an obvious risk, and (d) that the relation of landlord and tenant existed, and that the tenant knowingly occupied a building in an obviously dangerous condition. The first three of these were reiterated in the motion to direct, but not the last.

The landlord and tenant theory may well be treated at this juncture. The evidence indicated that a city official had personal charge of the shed and collected a fee of so much per day for the privilege of using a stall. Some paid by the day, others for a longer time. Plaintiff said he had paid for a month in advance on October 1st. He was injured on the 6th. For present purposes it may be assumed, without deciding, that the relation of landlord and tenant existed, as to this particular stall. But neither motion, to nonsuit or to direct, was put on the proposition that the contract of letting of itself connotes no responsibility on the part of the

landlord for the safe condition of the demised premises. What was urged was that the plaintiff by continuing to occupy a building "in a knowingly dangerous condition" had assumed the risk. This was therefore substantially the same as ground (c) above. But before leaving this subject of landlord and tenant we may as well point out that the case, if a case of landlord and tenant at all, is one of the owner of a building rented out in sections rented to various tenants, with a common passage and common roof controlled by the landlord, on whom it devolved under well settled principles to use due care to have the passage and roof reasonably safe. *Siggins* v. *McGill,* 72 *N. J. L.* 263; *Ionin* v. *E. D. & M. Co.,* 107 *Id.* 145, and cases cited.

The substantial questions therefore were:

1. Was the jury entitled to find negligence of the city in the management of this shed, whereby it was caused to fall?

2. Was there, as a court question, an assumption by plaintiff of an obvious risk?

3. Was there, as a court question, contributory negligence of plaintiff?

Question 1 we answer unhesitatingly in the affirmative. On this the proof was ample; and indeed the absence of proof of negligence is not seriously suggested.

Questions 2 and 3 may be treated together. Both questions were for the jury. The plaintiff testified that the shed was leaky, and sometimes looked quite bad, but he never paid any particular attention to its general condition; that he had never complained of it being dangerous. The witness Paffendorf, president of a farmers' association, testified that the association had petitioned to have the shed repaired. That the four by four columns were not plumb any more; that "there was a slight leaning, though not so bad that perhaps an uninitiated person or one without any technical knowledge might notice it." That from the day when he first came there the posts were out of plumb and that over several years he did not notice that they got out of plumb much more, or any more. Plaintiff testified that most of the farmers had gone for the day, and that if the shed had fallen

half an hour sooner there would have been fifty of them under it. Paffendorf testified that the posts were braced lengthway of the shed, and were braced through underneath the shed. The market keeper testified that there was a strong wind blowing, and that at three o'clock (the shed fell at six) it was raining. He also testified that plaintiff had asked him why the electric lights were shut off and he had said the shed would be torn down later in the day and plaintiff had replied that he was always afraid it would fall down and kill somebody, and that it did fall ten minutes later. This conversation plaintiff denied.

Enough of the evidence has been reproduced to show that the matters of assumption of risk and contributory negligence were for the jury. We conclude that the motions to nonsuit and direct were properly denied. As to alleged errors in the charge: Grounds of appeal Nos. 4, 5, 6 and 7 bring up passages therein where it is said that the court controlled the jury on findings of fact. We have examined them with care and ascertained that the claim is unfounded. In part, the facts stated were conceded; in part, the charge was a comment on testimony; in part, a probable finding was indicated to, but not imposed upon the jury; and in summation, the court warned the jury "not to take the court's version of the facts nor any inferences which the court may draw from the facts." There was no control of the jury in this regard.

Ground 8, as argued, presents a point which we regard as altogether without substance, but which is reiterated several times, and may as well be disposed of at once. The court charged:

"Of course, the danger here was the falling of this shed. Even though it appeared to be out of repair and the roof evidently leaked, and some of these uprights did lean, it is for you to say whether or not by that condition the plaintiff himself could have anticipated the accident as it did happen, and being in a position where he ought to have anticipated such an action was guilty of contributory negligence in going under the shed."

The argument, as we understand it, is that the court erred

in limiting the inquiry on contributory negligence to the question whether the shed was likely to fall. As that fall caused plaintiff's injury, we are unable to see that any other possible occurrence had any relevancy to the case.

Ground 9 is that the court erred in charging the jury as follows:

"Counsel has asked the court to charge upon the theory that this plaintiff was a tenant. Whether he was or not, I charge as follows, in view of the fact that this charge makes no difference whether he was a tenant or not."

This is to be read in connection with defendant's fifth request which was then charged by the court in the following modified form, the clause added being in parenthesis:

"5. If a tenant accepts and uses premises which are devoid of the very protectory [sic] essentials of which he now complains, presenting a deficiency in construction as conspicuous and apparent to him as it was to the owner, and if, with this knowledge he chooses to occupy and use the premises, and to assume the inconveniences and disadvantages incident to such use conjoined with the risks obviously attendant thereon (and if you find that one of the risks was that the building was likely to fall or otherwise endanger the safety of persons), he thus creates a legal status of knowledge and consent tantamount to estoppel *in pais,* which must be held to operate as an insuperable barrier to his recovery."

The argument under Ground 9 is that the clause "in view of the fact that this charge makes no difference whether he was a tenant or not" took from the consideration of the jury (to use the language of the brief) "the question of fact as to whether the relationship of landlord and tenant existed." But no question of fact was taken from the jury. What the court said was, tenant or no tenant, the rule was the same. No possible harm could come to defendant from that instruction.

The brief next takes up Grounds 13, 14 and 15, all of which relate to the same point argued under Ground 8, *i. e.,* limiting the inquiry to the likelihood of the shed falling. What we have said under Ground 8 covers these grounds also.

Grounds 10, 11 and 12 are faulty and require no consideration, as they fail to quote the requests not charged. *State* v. *Blaine,* 104 *N. J. L.* 325; *Booth* v. *Keegan,* 108 *Id.* 538. However, they refer to the second, fifth and sixth requests, which were in fact charged with the addition mentioned under Grounds 8, 13, 14 and 15 above, and we think properly so modified.

Finally, Ground 3, the allowance of a question to witness Paffendorf, eliciting an answer substantially identical to one made by the witness a moment before without objection, *i. e.,* "the slight leaning," &c., quoted in full above. We can see no harmful error in the repetition, needless though it was.

The judgment will be affirmed.